SAMUEL P. TRAIN & another *vs.* BOSTON DISINFECTING COMPANY.

Suffolk.   March 9. — May 12, 1887.   FIELD, C. ALLEN, & GARDNER, JJ., absent.

In an action of replevin of certain rags imported into a city by the plaintiff, and retained by the defendant under a claim of lien for the charges for disinfecting the rags, it is not open to the plaintiff to object that the answer, which is demurred to, does not show that the disinfection was accomplished to the satisfaction of the board of health of the city, in accordance with a regulation of the board, but only shows that the defendant's process of disinfection was one satisfactory to the board, if such objection is not specifically assigned as a cause of demurrer.

In an action of replevin of certain rags imported into a city by the plaintiff, and retained by the defendant under a claim of lien for the charges for disinfecting the rags, it is not open to the plaintiff to contend that the provisions of the Pub. Sts. c. 80, §§ 64, 67, contemplate a special exercise of the judgment of the board of health as to each cargo arriving, and not the passage of a general regulation, if the answer, which is demurred to, shows that there was a distinct order for the disinfection of the rags in question.

A regulation of the board of health of a city, passed under the authority conferred by the St. of 1816, c. 44, and the Pub. Sts. c. 80, and ordering "that on and after this date all rags arriving at this port from any foreign port shall, before being discharged, be disinfected under the supervision of an officer of this board, and in a manner satisfactory to this board," even if the order was formal only, and was passed without any inquiry into the character of the rags or their special history, is not unreasonable.

A regulation of the board of health of a city, passed under the authority conferred by the St. of 1816, c. 44, and the Pub. Sts. c. 80, and ordering "that on and after this date all rags arriving at this port from a foreign port shall, before being discharged, be disinfected under the supervision of an officer of this board, and in a manner satisfactory to this board," is not void as infringing the power of Congress "to regulate commerce with foreign nations."

Under the St. of 1816, c. 44, and the Pub. Sts. c. 80, §§ 18, 64, 65, 67, 69, the board of health of a city may pass a regulation, without a hearing, ordering rags imported into the city to be disinfected, and the expense of such disinfection to be borne by the owner of the rags; and it is not competent for the owner of rags, as a defence to the claim for the charges for disinfection, to show that the rags did not require disinfection, and could not have transmitted disease, if they were of the class concerning which the regulation was made.

Under a regulation of the board of health of a city, made in pursuance of the authority conferred by the St. of 1816, c. 44, and the Pub. Sts. c. 80, §§ 18, 64, 65, 67, 69, ordering rags imported into the city to be disinfected at the expense of the owner, the work of disinfection may be delegated by the board to a third person, who is entitled to claim a lien upon the rags for his charges.

REPLEVIN of one hundred and twenty-four bales of rags. The answer, among other things, set up two circulars of the United States Treasury Department relating to the importation of old rags, dated December 22, 1884, and June 10, 1885, respectively, also a regulation of the board of health of the city of Boston relating to the disinfection of imported rags, dated June 1, 1885, the material parts of which circulars and regulation appear in the opinion; that the rags replevied were imported into Boston by the plaintiffs on or about March 3, 1886, and were ordered by said board of health to be disinfected by the defendant corporation at its works, and were received by the defendant for disinfection in accordance with said order; that the plaintiffs protested in writing against such disinfection; that afterwards the defendant disinfected the rags, the process used

being one satisfactory to the board of health ; that the plaintiffs demanded the delivery of the rags without the payment of the charges for disinfection ; that the defendant refused to deliver the rags without the payment of all charges, and the plaintiffs replevied them ; and that the charges for disinfection were a lien upon the rags, and the defendant had a right to retain possession of the rags until the same were paid.

The plaintiffs demurred to the answer, and assigned, as causes of demurrer, that the answer did not set forth any facts sufficient to constitute a defence to this action, or which entitled the defendant to hold the goods referred to in the declaration ; and that the answer did not show that the cost of such disinfection, if any, was imposed upon the plaintiffs by any legal body or person competent to subject the plaintiffs or their goods to the charges referred to in the answer, nor that said rags were disinfected at the plaintiffs' request, nor that the plaintiffs agreed to pay for such disinfection.

The Superior Court sustained the demurrer, and ordered judgment for the plaintiffs ; and the defendant appealed to this court.

*L. D. Brandeis,* (*S. D. Warren, Jr.,* with him,) for the plaintiffs.

*R. D. Smith & C. A. Prince,* for the defendant.

DEVENS, J. The plaintiffs in their argument contend that the disinfection of the rags by the defendant does not appear by the answer to have been in accordance with the regulations of the board of health, because the regulation requires disinfection to the satisfaction and under the supervision of the board, and the answer does not show that the disinfection was accomplished to the satisfaction of the board, but only that the defendant's process was one satisfactory to the board. This objection, if it have any force, is purely technical. It is not specifically assigned by the plaintiffs as one of the causes of demurrer. A more general allegation, that the answer does not set forth any facts sufficient to constitute a defence, or to maintain the lien claimed, will not enable a party to avail himself of similar deficiencies in pleading. The particulars in which alleged defects consist are to be specially pointed out. Pub. Sts. *c.* 167, § 11. *Washington* v. *Eames,* 6 Allen, 417.

The plaintiffs further contend, that the board of health had no power to order the rags to be disinfected by the defendant,

at the plaintiffs' expense, by an order made under the general regulation which it undertook to make on June 1, 1885. By the charter of the city of Boston, all powers vested in the city council or in the board of mayor and aldermen relative to the public health and the quarantine of vessels were conferred on the city council, with authority to delegate the whole or any part thereof. By the city ordinance, (Rev. Ord. 1885, c. 23, §§ 1, 2,) all these powers were granted to the board of health, which was created by the same ordinance. These powers are derived from the St. of 1816, c. 44, the general legislation in relation to boards of health, Pub. Sts. c. 80, and the authority there given, including the power to make quarantine regulations. By the St. of 1816, c. 44, § 2, the board of health had power "to examine into all causes of sickness, nuisances, and sources of filth, . . . . in any vessel within the harbor of Boston, or within the limits thereof, and the same to destroy, remove, or prevent, as the case may require." By § 5 of the same chapter, it might make any rules, orders, and regulations "relating to clothing or any article capable of containing or conveying any infectious disease, or creating any sickness, which may be brought into, or conveyed from, the town of Boston, or into or from any vessel, . . . . as they shall think proper for public safety, or to prevent the spreading of any dangerous or contagious disease."

The Pub. Sts. c. 80, § 18, provide that "the board of health of a town shall make such regulations as it judges necessary for the public health and safety, respecting nuisances, sources of filth, and causes of sickness, within its town, or on board of vessels within the harbor of such town, and respecting articles which are capable of containing or conveying infection or contagion, or of creating sickness, brought into or conveyed from its town, or into or from any vessel." Section 64 provides that "the board of health in each seaport town . . . . may make such quarantine regulations as it judges necessary for the health and safety of the inhabitants." Section 65 provides that "such regulations shall extend to all persons, goods, and effects arriving in such vessels." Section 67 provides that "the board in each seaport town may at any time cause a vessel arriving in such port, when such vessel or the cargo thereof is in its opinion foul or infected so as to endanger the public health, to be removed to the quarantine ground

and thoroughly purified at the expense of the owners, consignees, or persons in possession of the same." Section 69 provides that "all expenses incurred on account of any person, vessel, or goods, under quarantine regulations, shall be paid by such person or the owner of such vessel or goods respectively." These sections are sufficient to authorize the board of health, when articles arrive in the harbor "capable of containing or conveying any infectious disease or creating any sickness," to provide for their being cleansed, and for imposing the expense thereof upon the owner. If they can be separated from the other goods in a cargo, there is no reason why this should not be done, and why they alone should not be subjected to purification, or why the vessel should necessarily be carried to the quarantine grounds, and thus its owner and the owners of other goods forming a part of the cargo, but not dangerous to the public health, should be subjected to serious inconvenience.

The quarantine order of the board of health of June 1, 1885, after reciting the untrustworthy character of the evidence as to the origin, history, and treatment of rags brought to this city from foreign ports, the misleading character of the health certificates brought by masters of vessels from ports from which rags are shipped, and the danger from cholera and other contagia likely to be carried by these importations, orders "that on and after this date all rags arriving at this port from any foreign port shall, before being discharged, be disinfected under the supervision of an officer of this board, and in a manner satisfactory to this board." The remainder of the order provides for different modes of disinfection, as the history or circumstances of the shipment may require, and for the details of the manner in which the port physician shall perform his duties in passing the vessel or ordering disinfection, and the words " being discharged " in the order are explained as meaning " before being discharged by the board of health and allowed to be delivered to the consignees."

The plaintiffs contend that the statute contemplates a special exercise of the judgment by the board of health as to each cargo arriving, and not the passage of a general regulation. This contention we do not think open to the plaintiffs; an examination of the answer shows that there was a distinct order relating to the rags, the price for the disinfection of which is here under

discussion, by which a disinfection of them was directed. Nor, if we were to assume that the order was a formal one only, and that it was passed without any inquiry into the character of the rags or their special history, should we be prepared to say that the regulation was unreasonable, because it dealt with a particular class of goods, and subjected all of that class to more or less disinfection. There may be articles of commerce, as the recital of the order describes the rags to be, so capable of carrying or transmitting infection that they cannot be admitted in any case into a city or town without danger, and should therefore always be subjected to examination, and to more or less purification. There would seem to be no doubt that, as certain things may be pronounced nuisances *per se*, certain articles also may be held as always properly subject to quarantine regulation.

The plaintiffs further urge, that the regulation is void, as trenching upon the domain of Congress in its power " to regulate commerce with foreign nations." The plaintiffs rely much on the case of *Railroad* v. *Husen*, 95 U. S. 465, in which a statute of Missouri, which forbade the driving or conveying into the State, within certain periods, of any Texan, Mexican, or Indian cattle, was held unconstitutional. But this decision most fully recognizes the right of a State to pass reasonable quarantine or inspection laws, as being clearly within the police powers necessary for its protection. The act in question was an exercise of the highest power over the subject of transportation, namely, its entire destruction; but, in holding this to be beyond the police powers of the State, Mr. Justice Strong, who delivered the opinion of the court, observes that the police power " would justify the exclusion of property dangerous to the property of citizens of the State; for example, animals having contagious or infectious diseases. All these exertions of power are in immediate connection with the protection of persons and property against noxious acts of other persons, or such a use of property as is injurious to the property of others. They are self-defensive." He further unhesitatingly admits " that a State may pass sanitary laws, and laws for the protection of life, liberty, health, or property within its borders;" that " it may prevent persons and animals suffering under contagious or infectious diseases, or convicts, &c., from entering the State;" and that "for the

purpose of self-protection it may establish quarantine, and reasonable inspection laws."

So far from the regulation in question interfering with any legislation of the United States, or any regulation of its executive departments, the circular of the Treasury Department of December 22, 1884, and the circular of June 10, 1885, show that the construction by that department, at least, is quite otherwise. The circular of 1884 directs that "no old rags, except those afloat on or before January 1, 1885, . . . . shall be landed in the United States . . . . from any foreign country, except upon disinfection at the expense of the importers, as provided in this circular," and prescribes certain processes which will be considered satisfactory, and "will entitle them to entry, and be landed in the United States upon the usual permit of the local health officer." The circular of June 10, 1885, assigns as the reason for the withdrawal of the previous circular the fact, that "under existing laws no general regulations can be legally framed whereby the disinfection of old rags can be accomplished in foreign ports to the satisfaction of the several health authorities;" revokes previous circulars concerning the disinfection of imported old rags; provides that, when imported from foreign countries, they shall only be admitted to entry upon production of permits from the health officers at ports of importation; and adds, "vessels carrying old rags, arriving at any United States quarantine, will be detained by the quarantine officers, and held subject to the order of the proper health authorities at the port of destination." The Treasury Department of the United States, so far from treating the regulations of local health officers as an interference with the rights or the legislation of the United States, transfers to the regulations, as made in different localities by the respective health officers, the whole subject of the disinfection of foreign imported rags. The regulations made by the board of health do not infringe the power of Congress to regulate commerce; they are strictly police regulations, and, as such, may be passed under the authority of the legislation of the Commonwealth.

It is further the contention of the plaintiffs, that the regulation of the board of health is invalid, in so far as it seeks to impose the expense of disinfection upon the owner, without a

hearing; and that, as no method is provided by law for review-
ing, by appeal to a jury or otherwise, the action of the board of
health, whether this action was taken under its general regula-
tion or was a special examination of this particular cargo, it can-
not determine whether the plaintiffs are liable for the expense
of disinfection ; and further, that, even if the order may be valid
to the extent of protecting the board from an action of tort for
its interference, to render the plaintiffs liable for these expenses
the answer should show, and the defendant must prove, that
there was reasonable ground to believe that the rags were dan-
gerous to the public health.    The plaintiffs rely much on *Sa-
lem* v. *Eastern Railroad*, 98 Mass. 431, where it was held that,
while the board of health would not be liable in tort for its
action in removing, without notice or hearing, an alleged nui-
sance, if no nuisance actually existed, the expense attendant on
the action of the board could not be recovered from the owner
of the property.    The case then before the court was one where
a structure, otherwise lawful, had, as was alleged, become a nui-
sance by the mode in which it had been constructed, so as to set
back stagnant water upon adjacent lands.    It belongs to that
class of cases where trades otherwise lawful become nuisances
by the offensive or filthy manner in which they are conducted.
*Belcher* v. *Farrar*, 8 Allen, 325.    *Sawyer* v. *State Board of
Health*, 125 Mass. 182.    But there can be no doubt of the right
of the Legislature to pronounce, under its police power, certain
things or certain acts nuisances in themselves.    Nor are such
laws obnoxious to any constitutional provision, because they do
not provide compensation to the individual whose liberty to keep
or do them is restrained.    It may forbid entirely the exercise of
certain trades noxious or offensive, or trades which it holds to be
such, or permit it under such safeguards as it may prescribe ;
it may forbid certain articles, as gunpowder, to be stored near
habitations; it may regulate the height of buildings ; and it may
provide that these things may be regulated by ordinance or by-
laws of the respective cities or towns, or controlled by their
authorities.    It may determine when that which is otherwise
property shall cease to be such, if kept contrary to law.    *Com-
monwealth* v. *Alger*, 7 Cush. 53.    *Fisher* v. *McGirr*, 1 Gray, 1.
*Commonwealth* v. *Tewksbury*, 11 Met. 55.    *Baker* v. *Boston*, 12

Pick. 184. *Vandine, petitioner*, 6 Pick. 187. *Watertown* v. *Mayo*, 109 Mass. 315. Where anything is declared a nuisance by legislation, it is not competent for a party to show that it is not in fact one. The owner or keeper of intoxicating liquor proved to have been kept for unlawful sale cannot show that such keeping is not a nuisance in fact, when the Legislature has declared it to be one. Rights of property are not indeed to be invaded under the guise of police regulations for the preservation of public order, the protection of public health, or to guard against threatened nuisances. If it appears that the real object and purposes of the regulation are other than these, courts will interfere to protect the just rights of the citizen in his property.

Quarantine laws are a familiar exercise of the police power of a State. Their enactment is within its lawful province, and the making of regulations for their enforcement has always been entrusted to subordinate boards. Even if it be conceded, as it has been often contended, that whenever Congress shall undertake to provide a general system of quarantine, or shall confide the execution of such a system to a national board of health, or to local boards, as may be found expedient, all state laws will be abrogated, at least so far as the two are inconsistent, — until this is done, the laws of the State are valid. *Morgan's Steamship Co.* v. *Louisiana Board of Health*, 118 U. S. 455. The board of health is invested by the Legislature with the power to make regulations necessary for the health and safety of the inhabitants, extending to all persons, goods, and effects arriving in vessels; it may determine that certain articles, on account of their liability to convey infection and the impossibility of ascertaining their history and where they have been originally collected, shall always be subjected to disinfection, at least externally in the bales in which they are imported, and that such a precaution is necessary before they are delivered to the importers for distribution among the inhabitants. This is a reasonable regulation, made under the police power of the State, which the board is executing. Nor, legislation having provided that all expenses incurred on account of goods under quarantine laws shall be paid by the owner, is it competent for the owner, as a defence to this claim, to show that the goods did not require disinfection, and could not have transmitted disease, if they were

of the class concerning which the regulation had been made. Whether he might show that the expense incurred in doing that which was ordered to be done was unreasonable, and thus unjustifiable, is a question that does not here arise.

The plaintiffs further contend, that, even if the board of health had the power to order the rags to be disinfected by the defendant at the plaintiffs' expense, still disinfection under their order did not give the defendant a lien upon the rags, and this for the reason that the statute contemplates that the expenses shall be borne by the city or town, in the first instance, for whom the board of health acts, and for whom the work of disinfection is to be performed by its agents or servants; and further, that, while the Pub. Sts. c. 80, §§ 65, 67, 69, provide that the expense of carrying out the quarantine regulations, &c. shall be borne by the owner, as § 80 of the same chapter provides that the expenses incurred by a town in the removal of a nuisance, or for the preservation of the public health, which are recoverable from a private person or corporation, may be sued for in an action of contract, this remedy is exclusive. Any right of lien, whether in favor of the city or town, or of any one by whom the work may be done, is therefore, according to the plaintiffs' contention, excluded by implication. If we concede that § 80 applies to expenses under quarantine regulations, as well as to those incurred under general orders of the board, and if no such remedy previously existed, a cumulative remedy was simply provided thereby, in addition to those which had before existed. The statute from which this section is derived was the St. of 1849, c. 211. Gen. Sts. c. 26, § 49. Long before this time the owner of goods upon which expenses had been incurred for disinfection under quarantine regulations had been rendered liable for the same. St. 1816, c. 44, § 6. Rev. Sts. c. 21, §§ 30–34. When new remedies are given by statute to enable one more effectually or conveniently to enforce rights, and are intended for his benefit, the provisions therefor, unless expressly excluding other remedies, are to be construed as cumulative rather than restrictive. *Barden* v. *Crocker*, 10 Pick. 383. *Kidder* v. *Dunstable*, 11 Gray, 342. *Coffin* v. *Field*, 7 Cush. 355. *Counter* v. *Couch*, 8 Allen, 436. *Reynolds* v. *Hanrahan*, 100 Mass. 313. It cannot be important that, in this Commonwealth, the creditor

has a right of attachment on mesne process. Such a remedy is very imperfect, as compared with that afforded by a lien, which is a usual and efficient remedy where work is done upon a chattel by a bailee, to whom it is confided under any agreement, either express or implied, with the owner thereof. Overton on Liens, 46. Nor is it important that, while expenditures may be made upon real estate under the orders of the board of health, a lien can only exist upon personal property, and thus that this remedy is partial. There is no reason why a well-recognized remedy as to personal property should not be enforced, because there may be cases coming within the statute affecting real estate to which it would not be applicable. Even if a lien might exist in favor of the city, if it had done the work through its officers, agents, or servants, and the plaintiffs contend that this was the only mode in which it was authorized to do it, they further argue that no lien can exist in the case at bar; that there can be none in favor of the city, as it has done no work, and none in favor of the defendant, as it was an independent contractor with the city, and there was no debt due to such contractor from the plaintiffs as the owners of the goods. The board of health might certainly delegate the work to an independent contractor; it was not necessarily to be done by it or its immediate servants, and under its personal supervision; it was sufficient if it prescribed the method, and that this was complied with. The board, in the language of the statute, was to "cause" the goods to be purified. § 67. It had a right to make a reasonable contract for the disinfection of the goods; the duty of paying for the expenses thus incurred was by the statute cast upon the plaintiffs; and their promise to pay therefor is one implied by law. Where a party is subjected to such a duty, this obligation is to be performed, and the law will, of its own force, imply a promise, even against his protestation and express declaration. *Earle* v. *Coburn*, 130 Mass. 596. Such a contract necessarily implies a lien in favor of the contractor into whose hands the goods are taken for disinfection, to secure him for the expenses properly incurred in his work.

*Demurrer overruled.*