JOHN H. NELSON *vs.* STATE BOARD OF HEALTH.

Plymouth.    May 19, 1904. — July 5, 1904.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & LORING, JJ.

*Board of Health.*

The provision of § 4 of St. 1897, c. 510, giving to any person aggrieved by an order passed by the State board of health under that act the right to appeal and file a petition for a jury within ten days from the service of such order upon him, or, in case of failure to do so by mistake, within thirty days from the service of the order upon him, applies only to orders made under § 3 of that act which are quasi judicial, and does not apply to rules, regulations and orders made by the board under § 1 of the act which are quasi legislative in character. See now R. L. c. 75, § 119.

PETITION to the Superior Court, filed November 1, 1903, under St. 1897, c. 510, § 4, by an owner of a farm on the shores of Assawompsett Pond in Lakeville, alleging that the petitioner

was aggrieved by certain rules, regulations and orders adopted by the State board of health on December 5, 1901.

The respondent demurred to the petition. In the Superior Court *Hardy*, J. sustained the demurrer and gave judgment for the respondent dismissing the petition. The petitioner appealed.

*F. M. Bixby & H. F. Parker*, for the petitioner.

*R. A. Stewart*, Assistant Attorney General, for the respondent.

LORING, J.   This is a petition by the owner of land bordering on Assawompsett Pond, which is a great pond.

In the petition it is alleged that on December 5, 1901, the State board of health made certain rules, regulations and orders, a copy of which is annexed to the petition, " for the purpose of preventing the pollution and securing the sanitary protection of the waters " of that and another pond " and their tributaries used by the city of Taunton as sources of water supply " ; that said rules, regulations and orders were published on October 23, 1903; that the petitioner is aggrieved by said rules, regulations and orders and appeals therefrom; and that he brings this petition " for a jury to hear, pass upon and determine the questions determined by said State Board of Health in the premises, in making, issuing and publishing said rules, regulations and orders, and that the jury may either alter or annul in full said rules, regulations and orders; and that he may recover his just damages caused to him by the making, issuing and publishing of said rules, regulations and orders, and costs."

The paper annexed, although characterized in the petition as " rules, regulations and orders," is headed at the top " Rules adopted by the State Board of Health."   Below is another heading : " Rules and Regulations for the purpose of preventing the pollution and securing the sanitary protection of the waters " of which we have already spoken.   In the body of the instrument it is stated that " The State Board of Health, acting under the authority of section 1 of chapter 510 of the Acts of the year 1897, and every other act thereto enabling, hereby makes the following rules and regulations for the purpose of preventing the pollution and securing the sanitary protection of the waters of Elder's Pond and Assawompsett Pond and their

tributaries, used by the City of Taunton as sources of water supply, which shall remain in force until further order."

Rule No. 1 forbids the maintenance of a privy, urinal, water closet or similar receptacle within forty feet of high water mark of the pond. Rule 14 forbids any person bathing, boating, fishing or putting any animal in the ponds, and rule 15 forbids the cutting of ice on the ponds.

It is alleged by the petitioner that his land has been used as a farm for over one hundred years; that he has various dwelling houses on his land, erected and let for summer dwellings, " with necessary cesspools and outbuildings "; that " his cattle have been accustomed to drink on the shore of said pond "; that " he has been accustomed from time to time to boat and fish and bathe in . . . said pond, . . . and to go upon and cut the ice of said pond; . . . that said cesspools and outbuildings were situated at a sufficient distance from the shore of said pond so that the waters of said pond are not and have not at any time been polluted thereby; that the use of said land for summer dwellings and as a farm was not and has not at any time been a nuisance, and that the waters of said pond are not and have not at any time been polluted by such uses of said premises; that the boating, fishing, bathing, going upon and cutting the ice and drawing of water in, upon or from the waters of said pond and the watering of cattle in said pond were not a nuisance, nor has any one of said uses been a nuisance, and that neither of said uses nor all of them was a source of pollution or caused pollution to the waters of said pond."

The petitioner's contention is that he comes within § 4 of c. 510 of the acts of 1897, which provides that " any person aggrieved by an order passed under this act may appeal therefrom."

The respondent's answer to this contention is that the rules and regulations were in fact made under § 1 of the act, as is stated in the rules themselves, and that the appeal to a jury given by § 4 is only from an order made under § 3 of that act. To this the petitioner's reply is that the language of § 4 is " any . . . order passed under this act," and not any order passed under the next preceding section of the act, and that the authority given by § 1 is to make "rules, regulations and

orders," and not rules and regulations as distinguished from orders.

It is apparent from what has been stated as to the contentions on one side and the other, that the act is not carefully drawn. We have however no doubt as to the construction of it. In our opinion the construction put forward by the respondent is the true one.

The time within which the appeal is to be applied for indicates, if it does not require, the adoption of that construction. The application for a jury is to be made "within ten days from the service of such order upon" the person aggrieved. An order under § 3 must by the provisions of that section be served on the party against whom it is directed. But rules and regulations adopted under § 1 are not addressed to any one, but are to be published for the information of the public. See St. 1899, c. 308.

Further there is a decisive reason for this construction which goes even more to the substance of the whole matter.

Since the Revised Statutes, town boards of health have been empowered to make "such regulations, as they may judge necessary for the public health and safety, respecting any articles which are capable of containing or conveying any infection or contagion, or of creating any sickness, when such articles shall be brought into or conveyed from their town, or into or from any vessel." Rev. Sts. c. 21, § 6. These regulations are to be published in some newspaper in the town, or, where there is no newspaper, by posting them in some public place. Rev. Sts. c. 21, § 8. Both Rev. Sts. c. 21, §§ 6, 8, were taken from St. 1816, c. 44, §§ 5, 6, which then applied to the city of Boston only. See Commissioner's Report, note to c. 21. The provisions of Rev. Sts. c. 21, § 6, were re-enacted in Gen. Sts. c. 26, § 5, (Pub. Sts. c. 80, § 18;) the provisions of Rev. Sts. c. 21, § 8, in Gen. Sts. c. 26, § 6, (Pub. Sts. c. 80, § 19.) The character of the action of a town board of health when it acts under these sections was considered in *Salem* v. *Eastern Railroad*, 98 Mass. 431. It was there said that regulations adopted under these sections "belong to that class of police regulations to which all individual rights of property are held subject, whether established directly by enactments of the legislative power, or by its

authority through boards of local administration." See also *Sprague* v. *Dorr*, 185 Mass. 10. In a word, they are quasi legislative in their character. Such regulations were not served upon any one, but notice of them had to be given to the public before persons could be held in fault for a disregard of their requirements. See *Salem* v. *Eastern Railroad*, 98 Mass. 431, 443.

But in addition to their power to make general regulations which might be necessary for the public health, town boards of health were empowered to examine into the existence of any specific case of nuisance, filth or cause of sickness dangerous to the public health, Rev. Sts. c. 21, § 9, and to make an order that it be removed, Rev. Sts. c. 21, § 10 ; and an order made by the board when acting under this section had to be served on the party against whom it was directed. This is implied in Rev. Sts. c. 21, §§ 10, 11 ; it was expressly provided for in case of cities in St. 1849, c. 211, § 4, and was expressly made applicable in case of towns by the Gen. Sts. c. 26, §§ 8, 9. The provisions of Rev. Sts. c. 21, § 9, were re-enacted in Gen. Sts. c. 26, § 7, (Pub. Sts. c. 80, § 20 ;) and those of Rev. Sts. c. 21, § 10, in substance in Gen. Sts. c. 26, §§ 8, 9, (Pub. Sts. c. 80, §§ 21, 22.) Action under these sections is quasi judicial. *Salem* v. *Eastern Railroad*, 98 Mass. 431, 443, 444.

The State board of health was given a similar quasi judicial power with respect to the pollution of sources of water supply for cities and towns by St. 1878, c. 183. By § 1 of that act the discharge of human excrement was forbidden into a source of water supply, or into any water, river or stream within twenty miles above the point whence the supply is taken ; by § 2 the direct or indirect discharge was forbidden into such water supply of any polluting matter of such quality and amount as either by itself or in connection with other matter should corrupt or impair the quality of the water for domestic use or render it deleterious to health. By § 4, power was given to the board to order a person violating §§ 1 or 2 to remedy the pollution ; an order under this act had to be served on the offending person and from it he had an appeal to a jury. St. 1878, c. 183, § 6. By § 5, jurisdiction was given to the Supreme Judicial Court to enforce the order of the board, and by § 6, it was provided that pending an appeal to a jury the pollution against which the

order was issued should not be continued contrary to the order of the board.    These sections of St. 1878, c. 183, are the origin of the power given to the board of health by St. 1897, c. 510, § 3.    These provisions of St. 1878, c. 183, were re-enacted in Pub. Sts. c. 80, §§ 96–100.    But this power was subsequently taken away in 1884, (St. 1884, c. 154, § 2,) and then was restored to the board in 1890.    St. 1890, c. 441.

Power to make general regulations for the purpose of preventing the pollution and securing the sanitary protection of sources of water supply was first given to the State board of health in 1897, St. 1897, c. 510, § 1, and provision for the publication of such regulations was made two years later.    St. 1899, c. 308.

It is apparent that in giving to the State board of health power to make rules, regulations and orders the Legislature intended to invest it with a power similar to the power given to town boards of health to make regulations.    And we are of opinion that rules adopted by the State board of health under St. 1897, c. 510, § 1, are quasi legislative ; that orders made by the board under § 3 of that act are quasi judicial in character ; and that the appeal to a jury given by § 4 is from an order made by the board in the exercise of its quasi judicial powers and has no application to regulations made by it in the exercise of its quasi legislative powers.

The correctness of this conclusion is borne out by the provisions of the Revised Laws.    The language of the act is changed there.    By the terms of R. L. c. 75, § 119, a jury can be claimed only in case of " an order passed under the provisions of the preceding section," which is in fact a re-enactment of St. 1897, c. 510, § 3.

*Petition dismissed.*