COMMONWEALTH *vs.* HENRY D. SISSON.
SAME *vs.* FRANK SISSON.

Berkshire.    September 12, 1905. — October 17, 1905.

Present: KNOWLTON, C. J., LATHROP, HAMMOND, LORING, & BRALEY, JJ.

*Constitutional Law*, Police power. *Fish and Game Commissioners. Watercourse.*

A riparian owner cannot by maintaining a sawmill on the bank of a stream for thirty years acquire a prescriptive right against the Commonwealth to discharge sawdust into the stream and thereby kill or injure fish therein, but holds his property subject to the right of the Legislature to prohibit or regulate the discharge of sawdust into the stream for the protection of edible fish.

The Legislature lawfully may delegate to the board of fish and game commissioners the power to select the brooks and rivers in which the fish are of sufficient value to warrant the prohibition or regulation of the discharge of sawdust into the stream.

The board of fish and game commissioners in exercising the power delegated to them by R. L. c. 91, § 8, of determining whether the fish of a brook or stream are of sufficient value to warrant the prohibition or regulation of the discharge of sawdust therein, and of prohibiting or regulating its discharge if so warranted, are acting in a legislative and not in a judicial capacity, and need not base their action on sworn evidence or give a hearing to a person requesting it, whose sawmill is injuriously affected by their action.

THE following statement of the case is taken from the opinion of the court :

These are two complaints, one against each defendant, charging them severally with permitting sawdust to be discharged into the Konkapot River, on March 29, 1905, in violation of an order made by the fish and game commissioners under R. L. c. 91, § 8, dated August 1, 1904.

The order, after reciting the authority given by the act, and stating that the mill here in question owned by the defendants had been examined by the board and that it had been determined by the board that the fish in the brook are of sufficient value to warrant the prohibition of the discharge of sawdust into it, and that the discharge of sawdust from the defendants' mill into said brook materially injures the fish therein, directs the defendants (1) to erect a blower or take other means approved by the commissioners to prevent the discharge of sawdust from said mill into said brook directly or indirectly, and

(2) not to accumulate a pile of sawdust on the bank of the brook so that it may be liable to fall into the stream or be swept away by a rise of water.

At the trial [in the Superior Court before *Crosby,* J.] it was proved that this order was served on the defendants on or before July 1, 1904, and that the defendants continued to discharge sawdust into Konkapot River up to the time these complaints were instituted. It also appeared that there were edible fish in the river at the time the board passed the order in question.

The defendants offered to show in substance that the commissioners in making the order did not act on sworn evidence or personal knowledge as to the fish or the sawdust; that in the spring of 1905 the defendants asked for a hearing, which the commissioners denied; that the mill has been used as it is now used for more than thirty years, under a claim of right, and that the right was admitted by the next millowner below; and finally, that a compliance with the order as to a blower would impair the efficiency of the mill about twenty-five per cent; that the sawdust could not be sold, and to cart it away would entirely destroy the value of the land for mill purposes. This evidence was excluded and an exception was taken.

The defendant then made the following six requests for rulings, to wit:

" First: That the act of the commissioners on fisheries and game, by which they determine that the fish in any brook or stream are of sufficient value to warrant the prohibition, or regulation, of the discharge of sawdust from any particular sawmill materially injures such fish, is a judicial act, which can be lawfully performed only after the hearing of evidence bearing upon the questions involved, viz: the value of the fish in such brook or stream, and the effect of such sawdust as injuring such fish.

" Second: That the order in this case, having been passed by the commissioners, without hearing any evidence, and without any knowledge by them of the value of the fish in the stream or the amount of water in the stream, or the amount of sawdust that is discharged by defendants' sawmill into the stream, is not a lawful order under the statute and is not binding upon the defendants.

"Third: That the defendants, and the predecessors in title, having been discharging sawdust from their sawmills for more than twenty years consecutively, under a claim of right, into the Konkapot River, have acquired by prescription a title to such right, and such right is their property, of which they cannot be deprived without compensation.

"Fourth: That Section 8 of Chapter 91 of the Revised Laws, makes no provision for compensation to the owner of a sawmill, who is forbidden by an order of the commissioners to discharge sawdust into a brook or stream and said statute is therefore unconstitutional and void so far as these defendants are concerned.

"Fifth: That this order of the commissioners so interferes with the use of the property of the defendants as to amount to a taking of such property for public use and the order is void, as no compensation to the defendants for such taking is provided by the order or by the statute under which the order is made.

"Sixth: That this order of the commissioners so interferes with the use of the property of the defendants as to seriously damage, impair or injure such property, and the order is void, as no provision is made either in the order or the statute under which the order is created, for compensating the defendants for such damage, impairment or injury to their property."

The judge refused to make any of these rulings, and directed a verdict of guilty in each case, imposing a fine of $15 on each defendant. The defendants excepted, and the judge on their motion suspended sentence until the questions of law involved could be determined by this court.

*H. C. Joyner*, for the defendants.

*J. F. Noxon*, District Attorney, for the Commonwealth, submitted a brief.

LORING, J. [After the foregoing statement of the case.] The defendants' grievance is that by an order of the board of fish and game commissioners they have been deprived without compensation being made therefor of the right to conduct the business of sawing wood, as they and their predecessors in title have conducted it for thirty years last past; that from this decision there is no appeal; and that not only was the order made without a hearing, but when a hearing was asked for by the defendants it was denied.

Their contention is (first) that under the act they had a right to be heard at the trial in the Superior Court on the questions of fact determined by the board ; (second) that they could not be deprived by the board of their prescriptive right to discharge sawdust into Konkapot River without being heard and by a finding not made on sworn evidence ; and (third) that under any circumstances this right cannot be taken without compensation being made for it.

In support of their contention they argue that the board, in determining (1) that the fish in Konkapot River are of sufficient value to warrant the prohibition or regulation of the discharge of sawdust therein, and (2) that the discharge of sawdust from the defendants' mill materially injured such fish, was a judicial action ; and, in connection with this argument, they rely on the distinction pointed out in *Salem* v. *Eastern Railroad,* 98 Mass. 431, between the action of a local board of health in making general regulations respecting articles capable of conveying infection or creating sickness and the authority of such a board to examine into the existence of any specific case of nuisance, filth or cause of sickness dangerous to the public health and to make an order for the removal of it. The former being a rule for all is legislative in character ; the latter being a determination as to a particular thing resulting in an order to the owner of it to do a specified act is judicial in character. For a later case where it is pointed out that similar legislative and judicial powers are given to the State board of health in connection with the pollution of a body of water used as a supply of a city or town, see *Nelson* v. *State Board of Health,* 186 Mass. 330.

We agree with the defendants' counsel as to what the order here in question is not. We agree that it is not a general regulation. What is determined by it is that the discharge of sawdust from the defendants' mill materially injures the fish in Konkapot River, and it orders the defendants to erect a blower, and forbids the defendants making a pile of sawdust in connection with the mill ; and it resulted in an order served on these defendants to do these acts. This is not a general regulation. But we do not agree that because it is not a general regulation it is a judicial action. The question to be decided here does not depend upon a choice between the two classes dealt with in

*Salem* v. *Eastern Railroad,* 98 Mass. 431, and in *Nelson* v. *State Board of Health,* 186 Mass. 330, and for these reasons :

We are of opinion in the first place that it is within the power of the Legislature to protect and preserve edible fish in the rivers and brooks of the Commonwealth, and for that purpose, if they think proper, to forbid any sawdust being discharged into any brook containing such fish.

The right to run a sawmill on the bank of a brook or a river is, like all rights of property, subject to be regulated by the Legislature when the unrestrained exercise of it conflicts with other rights public or private. See *Commonwealth* v. *Alger,* 7 Cush. 53, 54 ; *Rideout* v. *Knox,* 148 Mass. 368. The defendants' contention that they have a prescriptive right to discharge sawdust into the river (even if it kills or injures the fish therein) which prescriptive right cannot be taken away or impaired without compensation being made therefor, means this and nothing more : Where the Legislature, up to the passage of the act here in question, (St. 1890, c. 129,) had not regulated the business of sawing wood on the banks of streams having in them edible fish, and where, in the absence of such regulation, the defendants had discharged sawdust into the stream for thirty years, the people have lost the power to regulate the conflicting rights of sawmills on the bank of the stream and to preserve fish in the stream itself. The statement of the proposition is enough to show that there is nothing in it. The decision in *Attorney General* v. *Revere Copper Co.* 152 Mass. 444, relied on by the defendants, is confined to the gaining of prescriptive rights with respect to property owned by the public under a statute of limitations which puts the property rights of the public on the same basis as those of individuals.

We are of opinion in the second place that in case the Legislature thought that in regulating the conflicting rights of individuals to run sawmills on the banks of a river on the one hand, and of the public on the other hand to have fish live and increase in the same stream, it was not worth while to forbid sawdust being discharged into every stream in which there were edible fish, they could leave to a board having peculiar knowledge on the subject the selection of the brooks and rivers in which the fish were of sufficient value to warrant the prohibition or regula-

tion of the discharge of sawdust.   The right of the Legislature to delegate some legislative functions to State boards was considered by this court in *Brodbine* v. *Revere*, 182 Mass. 598.

And further, in case the Legislature thought that an act which forbade any sawdust to be discharged into any of the streams selected by the board was an unnecessarily stringent one, they could in our opinion leave it to the board to settle in each particular case the practical details required to harmonize best these two conflicting rights.

The power thus delegated to the board of fitting the details of regulation to the particular circumstances of each case is of the same character as that long exercised by the fish and game commissioners and their predecessors the board of inland fisheries in prescribing the details of the construction of the fishways to be constructed in dams where by law fishways have to be maintained.   See St. 1866, c. 238, §§ 2, 6 ; St. 1867, c. 344; Pub. Sts. c. 91, § 4.   See also Prov. St. 1745–46, c. 20 ; 3 Prov. Laws, (State ed.) 267.   These acts provide that the board, after examination of dams upon rivers where the law requires fishways, is to determine whether the fishways in existence are sufficient and to prescribe by an order in writing what changes or repairs, if any, shall be made, and at what times the fishways are to be kept open, and to give notice thereof to the owners of such dams.   The action of the fish commissioners under these acts is unquestionably legislative in character, and we cannot doubt that their action under them, exercised and acquiesced in by the public for this length of time, is valid.

The result is that in our opinion the action of the board in the case at bar was the working out of details under a legislative act.   The board is no more required to act on sworn evidence than is the Legislature itself, and no more than in case of the Legislature itself is it bound to act only after a hearing or to give a hearing to the plaintiff when he asks for one ; and its action is final, as is the action of the Legislature in enacting a statute.   And being legislative, it is plain that the questions of fact passed upon by the commissioners in adopting the provisions enacted by them cannot be tried over by the court.   This court has been recently asked to try over the expediency of compulsory vaccination in an action under a statute requiring it.   *Com-*

*monwealth* v. *Jacobson*, 183 Mass. 242. On its declining to do so an appeal was taken to the Supreme Court of the United States, and its refusal to do so was held to be correct. *Jacobson* v. *Massachusetts*, 197 U. S. 11, see particularly p. 30. See also Devens, J. in *Train* v. *Boston Disinfecting Co.* 144 Mass. 523, 531.

The practical result is that the defendants are forbidden to conduct their sawmill as they had conducted it for thirty years, by a board who have not heard evidence and have refused the defendants a hearing; that the action of the board is final, and that no compensation is due to them.

This result may seem strange. But it is no less strange than the practical results in cases which are decided law. Take the case before the court in *Nelson* v. *State Board of Health*, 186 Mass. 330, namely, a farm on the banks of a pond used as the water supply of a town. The State board of health can pass a general regulation under § 113 of R. L. c. 75, forbidding privies within a specified distance from its shore, and if the defendant had had a privy there for thirty years his right to maintain it would cease although the order was made without hearing; and the action of the board is final. On the other hand, if the board had proceeded under § 118 to investigate this particular privy, the defendant would have been entitled to a hearing, and, on appeal, to a jury, as provided by § 119. Again, take for example the regulation of a local board of health in question in *Train* v. *Boston Disinfecting Co.* 144 Mass. 523, requiring all rags arriving at the port of Boston from any foreign port to be disinfected at the expense of the owner before being discharged. The power of the local board of health to declare these rags a nuisance *per se*, so as to impose upon the owner without trial the expense of disinfecting them, was established by this court in that case. Had the local board undertaken to investigate the particular rags in question in *Train* v. *Boston Disinfecting Co.* under their jurisdiction to inquire into sources of filth, and they had been authorized under that act to abate the nuisance if they found the rags to be a nuisance, by ordering them to be disinfected at the expense of the defendant, they would have had to give the defendant a hearing on notice, and from their decision the defendant would have had a right to a trial by jury. That is what was decided in *Salem* v. *Eastern Railroad*, 98 Mass. 431.

That is to say, on the one hand where the law is general and the question is whether under it the defendants are committing a nuisance, the facts are determined by judicial action. On the other hand, the determination of the same facts is legislative in case the Legislature decides to make the thing a nuisance *per se.* And where it is legislative it is final and no hearing is necessary; and where, as is the case here, it is made in the exercise of the police power, no compensation is due. The delegation of such legislative powers to a board is going a great way. But the remedy is by application to the Legislature if a remedy should be given. In our opinion it is within its constitutional power, and the court can give no remedy.

For similar cases where the use which can be made of property has been left to the final determination of boards, see *Newton* v. *Joyce,* 166 Mass. 83; *Commonwealth* v. *Roberts,* 155 Mass. 281. See also in this connection *Wares, petitioner,* 161 Mass. 70. The difference between the majority and the minority of the court in *Miller* v. *Horton,* 152 Mass. 540, was on the construction of the act there in question.

*Exceptions overruled.*