CHARLES E. LYMAN *vs.* COMMISSIONERS ON FISHERIES AND GAME.

Berkshire.    September 12, 1911. — January 8, 1912.

Present: RUGG, C. J., MORTON, HAMMOND, & BRALEY, JJ.

*Fish and Game Commissioners. Constitutional Law. Words,* "Of sufficient value."

In R. L. c. 91, § 8, as amended by St. 1906, c. 356, § 1, giving to the commissioners on fisheries and game, in case they "determine that the fish of any brook or stream in this Commonwealth are of sufficient value to warrant the prohibition or regulation of the discharge therein of sawdust from saw mills," power to prohibit or regulate the discharge of sawdust from any particular sawmill which they find materially injures such fish, the words "of sufficient value" do not mean merely "of sufficient commercial value," but they mean "of sufficient value to make the preservation and multiplication of the fish worth while, taking all the circumstances into account."

On the hearing in the Superior Court of a petition to annul or alter an order of the commissioners on fisheries and game made under R. L. c. 91, § 8, as amended by St. 1906, c. 356, § 1, empowering them, if they determined that the fish of any brook or stream were of sufficient value to warrant the prohibition or regulation of the discharge therein of sawdust from sawmills and that the discharge of sawdust from any particular mill materially injured such fish, to prohibit or regulate such discharge, the presiding judge confirmed the order and in doing so refused to find that carrying it out would render the business of the sawmill affected unprofitable or compel its proprietor to give it up, and it was *held,* that it was not open to such proprietor to contend, upon a report of the case to this court, that the regulation was not a reasonable one.

Section 8 of R. L. c. 91, as amended by St. 1906, c. 356, § 1, which gave to the commissioners on fisheries and game, in case they "determine that the fish of any brook or stream in this Commonwealth are of sufficient value to warrant the prohibition or regulation of the discharge therein of sawdust from sawmills," power to prohibit or regulate the discharge of sawdust from any particular sawmill which they found materially injured such fish, was not unconstitutional as class legislation arbitrarily selecting sawmills for regulation or prohibition from among all other industries using streams for the discharge of waste products.

MORTON, J.   This is a petition to the Superior Court under St. 1906, c. 356, § 1, amending R. L. c. 91, § 8, in the nature of an appeal from an order of the commissioners on fisheries and game prohibiting the petitioner from discharging sawdust from a mill owned by him into the stream on which it is situated in the town of Becket, and from accumulating sawdust on the bank thereof so that it will be liable to fall or be swept into the stream, and requiring him to erect a blower or to take other measures to prevent the discharge of sawdust from the mill into the stream. The case was heard by the Chief Justice of the Superior Court, who took a view and made a report of his findings, and affirmed the order of the respondents. The petitioner requested certain rulings which were refused, and the case is here on exceptions taken by him to the refusal of the Chief Justice to rule as requested.

The statute provides that ". . . If the commissioners determine that the fish of any brook or stream in this Commonwealth are of sufficient value to warrant the prohibition or regulation of the discharge therein of sawdust from sawmills, and that the discharge of sawdust from any particular sawmill materially injures such fish, they may, by an order in writing to the owner or tenant of such sawmill, prohibit or regulate the discharge of sawdust therefrom into such brook or stream." St. 1906, c. 356, § 1.

The petitioner contends that by the words "of sufficient value" is meant "of sufficient commercial value," or of sufficient value to justify devoting the stream to fishing instead of to industry. But we think that there is nothing in the statute which warrants or requires such a construction or which shows that that is what the Legislature meant by the words "of sufficient value." It rarely, if ever, would happen that "the fish," or "the fisheries," as the statute as amended by St. 1910, c. 460, now reads, "of any brook or stream" would be of sufficient value commercially to warrant devoting the brook or stream to them to the exclusion of industrial

pursuits. It would be unreasonable therefore to suppose that the Legislature used the words "of sufficient value" in the sense contended for. From time immemorial the Legislature has regulated and controlled in the public interest the fisheries in the brooks and streams of the Commonwealth. The case has been and is one of conflicting rights, and the Legislature has governed itself accordingly. It has not undertaken to legislate in favor of one set of rights as opposed to another set of rights, but to act with due regard to the rights of all concerned.

There is nothing in the statute under consideration to show that the Legislature intended to depart from the policy which it had theretofore pursued, and we think that by the words "of sufficient value" is meant of value sufficient to make the preservation and multiplication of the fish in the brook or stream worth while taking all the circumstances into account, the kind of fish, for instance, their number, the suitableness of the stream for propagating and preserving them, its location and the opportunities afforded by it for enjoyment, the benefit that would result, and the nature of such rules and regulations as would have to be established and their effect upon such industries, if any, as there are upon the banks of the stream. In other words, the question is whether, taking all things into consideration, it is worth while to attempt to save the fish or not. Amongst the considerations which may properly be taken into account is the rest, recreation and enjoyment that will be afforded to such of the public as may desire to resort to the stream for the purpose of angling. In laying out a way selectmen have a right to take into account the fact that pleasure travel will be accommodated as well as business travel. *Higginson* v. *Nahant,* 11 Allen, 530. There was no error, therefore, on the part of the Chief Justice in ruling as he did, in effect, that such considerations could properly be taken into account in determining whether the fish were of sufficient value to warrant the prohibition of the discharge of sawdust into the stream from the petitioner's mill. There is nothing inconsistent with the conclusion here reached in *Commonwealth* v. *Boston Advertising Co.* 188 Mass. 348.

The petitioner also contends that the order constituted in substance and effect a taking of his property without compensation, and was therefore in violation of the Constitution of the United States and of this Commonwealth. There is no doubt that the

regulation adopted in any given case by the commissioners must be a reasonable regulation, and that if in such case the regulation adopted by them imposes upon the landowner a burden so oppressive and restrictive as entirely to prevent the pursuit of an otherwise lawful and harmless employment or business and thereby deprives the landowner of a valuable right of property, the regulation would be open to the objection urged by the petitioner that it constituted a taking of property without due compensation. But that is not the present case. The petitioner contended at the hearing before the Chief Justice that to prohibit him from discharging sawdust into the stream and to require him to instal a blower for the removal of sawdust and to use some of the well known devices for disposing of the same would render his business unprofitable and compel him to give it up. In regard to this contention the Chief Justice says "I do not so find." As the case stands, therefore, there is nothing to show that the order adopted by the commissioners will have the effect contended for by the petitioner or that taking all of the circumstances into account the regulation is not a reasonable one.

The petitioner still further contends that the selection of sawmills from all other industries * using streams for the discharge of waste products was an arbitrary selection and that the statute was therefore open to the objection that it was class legislation and for that reason was unconstitutional. The statute of which the one under consideration is an amendment was held to be constitutional in *Commonwealth* v. *Sisson,* 189 Mass. 247. The point now made does not appear to have been raised in that case, but we do not see why the grounds on which that case was decided do not necessarily dispose of the objection. It was expressly decided in that case that it was within the power of the Legislature to protect and preserve edible fish in the brooks and streams of the Commonwealth and for that purpose to forbid the discharge of sawdust into any brook containing such fish. The Legislature would have no right arbitrarily to select sawmills from other industries using the brooks or streams on which they were situated, for the deposit of waste products, and forbid them to discharge sawdust into the brooks or streams, and the fact therefore that it

---

* See now St. 1910, c. 460.

was decided in *Commonwealth* v. *Sisson* that the statute was constitutional shows that the court must have been of the opinion that the case was not one of the arbitrary selection of a class, but one in which there were good reasons for forbidding the discharge of sawdust into brooks and streams, and in which the action of the Legislature in so doing was therefore justifiable. Apart from *Commonwealth* v. *Sisson* the statute would not be unconstitutional as class legislation for reasons which we have suggested in commenting on *Commonwealth* v. *Sisson.* See *Commonwealth* v. *Interstate Consolidated Street Railway,* 187 Mass. 436.

The result is that the exceptions must be overruled.

*So ordered.*

*M. B. Warner,* (*J. Barker* with him,) for the petitioner.

*J. M. Swift,* Attorney General, & *A. Marshall,* Assistant Attorney General, for the respondents.