FRANCIS C. WELCH, trustee, *vs.* GEORGE R. SWASEY
& others.

Suffolk. November 13, 1906. — January 1, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & BRALEY, JJ.

*Constitutional Law,* Police power, Delegation of legislative power. *Boston.* *Munici-
pal Corporations.* *Mandamus.*

The Legislature in the exercise of the police power can limit the height of buildings
in a city in which they determine that the public health or the public safety re-
quires such a limitation.

In a city in which the Legislature have determined that the public health or the
public safety requires the limitation of the height of buildings they may estab-
lish different heights for different neighborhoods according to their conditions
and the uses to which the property in them is put.

In a city in which the Legislature have determined that the public health or the public
safety requires the limitation of the height of buildings, it is reasonable to allow
buildings to be constructed to a greater height in those parts of the city where
most of the buildings are used for purposes of business or commerce than in
those parts where most of the buildings are used for residences, even if some of
the streets in the business portion of the city are narrower than those in the
residential portion.

*Semble*, that, although the Legislature have no power to restrict the uses of private property for purely aesthetic purposes, yet when they have determined that the public health or the public safety requires the limitation of the height of buildings in a city, in exercising the police power for such lawful purposes they also may consider questions of taste and beauty.

The provisions of St. 1904, c. 333, that the city of Boston shall be divided into districts of two classes, in one of which all or the greater part of the buildings are used for business or commercial purposes, and in the other of which all or the greater part of the buildings are used for residential purposes or for other purposes not business or commercial, that in the first district no building shall be erected to a height of more than one hundred and twenty-five feet and that in the second district no building shall be erected to a height of more than eighty feet, are constitutional.

The provision of St. 1904, c. 333, § 2, by which the Legislature delegated to the commission on the height of buildings in the city of Boston, thereby created, the power to determine for a period of fifteen years the boundaries of the two districts of the city of Boston provided for by that statute, in one of which the height of buildings is restricted by the statute to one hundred and twenty-five feet and in the other to eighty feet, is constitutional, this work of the commissioners being not legislation but the ascertainment of facts and the application of the statute to them for purposes of administration.

The power to make rules and regulations in the nature of subsidiary legislation may be delegated by the Legislature to a local board or commission, such rules being subject to be tested in the courts to determine whether they reasonably are directed to the accomplishment of the lawful purpose of the statute under which they were made.

The provisions of St. 1905, c. 383, delegating to the commission, whose appointment thereby was directed, the power to fix different heights between eighty and one hundred feet and between eighty and one hundred and twenty-five feet at which buildings might be erected in different places in the district in the city of Boston established under St. 1904, c. 333, within which buildings were limited to the height of eighty feet, and to name the conditions under which buildings might be erected at the heights fixed by them in the places designated by them, are constitutional, and all reasonable regulations made by the commission directed to the proper accomplishment of the purpose of the statute will be enforced. ·

A provision in an order of the commission appointed under St. 1905, c. 383, regulating the height of buildings in the portion of the city of Boston designated as residential under authority of St. 1904, c. 333, that buildings may be erected on streets exceeding sixty-four feet in width to a height equal to one and one quarter times the width of the street upon which the building stands, and not exceeding one hundred feet in any event, is not outside the constitutional power of the commission.

This court cannot say that a provision in an order of the commission appointed under St. 1905, c. 383, regulating the height of buildings in the portion of the city of Boston designated as residential under authority of St. 1904, c. 333, that "no building shall be erected to a height greater than eighty feet unless its width on each and every public street on which it stands will be at least one-half its height," was made entirely for aesthetic reasons; and therefore such a provision is not unconstitutional.

On a petition for a writ of mandamus addressed to the members of the board of appeal from the building commissioner of the city of Boston ordering the respondents to direct the building commissioner to grant to the petitioner a permit to

erect a certain building to a height of one hundred and twenty feet, if the permit was refused on the ground that the height of the proposed structure would exceed the limit fixed by St. 1904, c. 333, and St. 1905, c. 383, and the orders of the commissioners thereunder, and the petitioner admits that if those statutes and the orders thereunder are constitutional his application for a building permit was refused rightly, the court has jurisdiction to dispose of the case on its merits, and the proceeding is a proper one to test the constitutionality of the statutes and the orders.

The building commissioner of the city of Boston, and the members of the board of appeal from his decisions, are not judicial officers.

The fact that the refusal of an officer to act is founded on a mistake of law does not preclude a writ of mandamus as a remedy to compel him to act.

PETITION, filed December 21, 1905, and amended February 19, 1906, for a writ of mandamus addressed to the members of the board of appeal from the building commissioner of the city of Boston ordering the respondents to direct the building commissioner to grant to the petitioner a permit to erect on the lot of land numbered eight on Arlington Street in Boston on the corner of Marlborough Street in that city, owned by the petitioner as trustee, a certain building, described and designated in an application and plans filed with the building commissioner, of the height of one hundred and twenty feet and six inches measured from the sidewalk to the highest point of the roof. The permit was refused by the building commissioner on September 26, 1905, on the ground that the proposed structure would exceed in height the limit permitted by St. 1904, c. 333, and St. 1905, c. 383, and the orders of the commissioners thereunder. On the same day the petitioner appealed to the respondents from this refusal on the ground that the statutes named and the orders of the commissioners thereunder are unconstitutional and void.

On September 29, 1905, the respondents made the following decision : . " Upon hearing before this Board on September 29, the appellant, through his attorney, Mr. Owen D. Young, admits and concedes that on the facts incidental to his application to erect the building in question a permit was rightly refused by the commissioner if Stat. 1904, Chap. 333, and Stat. 1905, Chap. 383, and the respective reports of the commissions thereunder be constitutional, and on this admission and concession the Board directs the commissioner to withhold a permit."

The case came on to be heard before *Braley*, J., who found the facts to be as alleged in the petition and admitted in the answer,

and reserved the case upon the findings and the pleadings for determination by the full court. If the statutes therein referred to are constitutional and valid, the petition was to be dismissed; otherwise, such order was to be entered thereon as law and justice might require.

St. 1904, c. 333, entitled " An Act relative to the height of buildings in the city of Boston," is as follows:

" Section 1. The city of Boston shall be divided into districts of two classes, to be designated districts A and B. The boundaries of the said districts, established as hereinafter provided, shall continue for a period of fifteen years, and shall be determined in such manner that those parts of the city in which all or the greater part of the buildings situate therein are at the time of such determination used for business or commercial purposes shall be included in the district or districts designated A, and those parts of the city in which all or the greater part of the buildings situate therein are at the said time used for residential purposes or for other purposes not business or commercial shall be in the district or districts designated B.

" Section 2. Upon the passage of this act the mayor of the city shall appoint a commission of three members to be called ' Commission on Height of Buildings in the City of Boston.' The commission shall immediately upon its appointment give notice and public hearings, and shall make an order establishing the boundaries of the districts aforesaid, and, within one month after its appointment, shall cause the same to be recorded in the registry of deeds for the county of Suffolk. The boundaries so established shall continue for a period of fifteen years from the date of the said recording. Any person who is aggrieved by the said order may, within thirty days after the recording thereof, appeal to the commission for a revision; and the commission may, within six months after its appointment, revise such order, and the revision shall be recorded in the registry of deeds for the county of Suffolk, and shall date back to the original date of recording. The members of the commission shall serve until the districts have been established as aforesaid; and any vacancy in the commission caused by resignation, death or inability to act shall be filled by the mayor, on written application by the remaining members of the commission or of ten inhabitants of the city.

The members of the commission shall receive such compensation as the mayor shall determine.

" Section 3. In the city of Boston no building shall be erected to a height of more than one hundred and twenty-five feet above the grade of the street in any district designated A, and no building shall be erected to a height of more than eighty feet above the grade of the street in any district designated B. These restrictions shall not apply to grain or coal elevators or sugar refineries in any district designated A, nor to steeples, domes, towers or cupolas erected for strictly ornamental purposes, of fireproof material, on buildings of the above height or less in any district. The supreme judicial court and the superior court shall each have jurisdiction in equity to enforce the provisions of this act, and to restrain the violation thereof.

" Section 4. This act shall take effect upon its passage."

St. 1905, c. 383, entitled " An Act relative to the height of buildings in the city of Boston," is as follows :

" Section 1. Within thirty days after the passage of this act the mayor of the city of Boston shall appoint a commission of three members to determine, in accordance with the conditions hereinafter provided, the height of buildings within the district designated by the commission on height of buildings in the city of Boston as district B, in accordance with chapter three hundred and thirty-three of the acts of the year nineteen hundred and four.

" Section 2. Said commission shall immediately upon its appointment give notice and public hearings, and shall make an order establishing the boundaries of or otherwise pointing out such parts, if any, of said district B as it may designate in which buildings may be erected to a height exceeding eighty feet but not exceeding one hundred feet, and the height between eighty feet and one hundred feet to which buildings may so be erected, and the conditions under which buildings may be erected to said height, except that such order may provide for the erection of buildings as aforesaid to a height not exceeding one hundred and twenty-five feet in that portion of said district B which lies within fifty feet from the boundary line separating said district B from the district designated by the commission on height of buildings in the city of Boston as district A in accordance

with said chapter three hundred and thirty-three, provided said boundary line divides the premises affected by such order from other adjoining premises both owned by the same person or persons, and within sixty days after its appointment shall cause the same to be recorded in the registry of deeds for the county of Suffolk. Any person who is aggrieved by such order may, within sixty days after the recording thereof, appeal to the commission for a revision; and the commission may, previous to the first day of January in the year nineteen hundred and six, revise such order, and the revision shall be recorded in the registry of deeds for the county of Suffolk and shall date back to the original date of recording. The boundaries so established shall continue for a period of fifteen years from the date of the recording of the order made by the commission on height of buildings in the city of Boston under chapter three hundred and thirty-three of the acts of the year nineteen hundred and four. The members of the commission shall receive such compensation as the mayor shall determine.

"Section 3. Within such parts of district B as may be designated by the commission as aforesaid (which may, except as hereinafter provided, include any parts of said district B affected by prior acts limiting the height of buildings) buildings may be erected to the height fixed by the commission as aforesaid, exceeding eighty feet but not exceeding one hundred feet, or one hundred and twenty-five feet as hereinbefore provided, and subject to such conditions as may be fixed as aforesaid by the commission; but within the following described territory, to wit: — Beginning at the corner of Beacon street and Hancock avenue, thence continuing westerly on Beacon street to Joy street, thence continuing northerly on Joy street to Myrtle street, thence continuing easterly on Myrtle street to Hancock street, thence continuing southerly on Hancock street and Hancock avenue to the point of beginning, no building shall be erected to a height greater than seventy feet, measured on its principal front, and no building shall be erected on a parkway, boulevard or public way on which a building line has been established by the board of park commissioners or by the board of street commissioners, acting under any general or special statute, to a greater height than that allowed by the order of said boards;

and no building upon land any owner of which has received and retained compensation in damages for any limitation of height or who retains any claim for such damages shall be erected to a height greater than that fixed by the limitation for which such damages were received or claimed.

"Section 4. No limitations of the height of buildings in the city of Boston shall apply to churches, steeples, towers, domes, cupolas, belfries or statuary not used for purposes of habitation, nor to chimneys, gas holders, coal or grain elevators, open balustrades, skylights, ventilators, flagstaffs, railings, weather vanes, soil pipes, steam exhausts, signs, roof houses not exceeding twelve feet square and twelve feet high, nor to other similar constructions such as are usually erected above the roof line of buildings.

"Section 5. This act shall take effect upon its passage."

On July 5, 1904, Nathan Matthews, Jr., Joseph A. Conry and Henry Parkman, the commissioners appointed by the mayor of Boston under St. 1904, c. 333, made an order, which was recorded in the registry of deeds for the county of Suffolk on the same day, establishing the boundaries of districts A and B under that statute. This was revised by an order made by the same commissioners on December 3 and recorded on December 5, 1904.

On July 21, 1905, the same persons, having been appointed by the mayor of Boston commissioners under St. 1905, c. 383, made the following order, which was recorded on the same day:

"The undersigned having been appointed on May 25, 1905, by the Mayor of the City of Boston, under the provisions of chapter 383 of the Acts of 1905, members of a commission to determine, in accordance with the provisions of said acts, the height of buildings within the district designated by the Commission on Height of Buildings in the City of Boston, as District B, in accordance with chapter 333 of the Acts of 1904, and having given notice and public hearings, hereby determine and order that in any of the Districts B, as designated by said Commission on Height of Buildings, in its order of July 5, 1904, as amended by its order of December 3, 1904, the said orders being recorded with Suffolk Deeds, book 2976, page 45, and book 3008,

page 129, respectively, buildings may be erected on streets exceeding sixty-four (64) feet in width, to a height equal to one and one quarter times the width of the street upon which the building stands; and, if situated on more than one street, the widest street is to be taken, the height to be measured from the mean grade of the curbs of all the streets upon which the building is situated, and not exceeding one hundred (100) feet, in any event.

" If the street is of uneven width, its width will be considered as the average width opposite the building to be erected.

" The width of a street shall be held to include the width of any space on the same side of the street upon which a building stands, upon or within which space no building can be lawfully erected by virtue of any building line established by the Board of Street Commissioners or the Board of Park Commissioners acting under general or special laws.

" All streets or portions of streets upon which buildings may be erected on one side only shall be considered as of a width of eighty (80) feet as to that portion upon which buildings may be erected on one side only.

" In the case of irregular or triangular open spaces formed by the intersection of streets, the width of the street shall be taken as the width of the widest street entering said space at the point of entrance.

" No building shall, however, be erected on a parkway, boulevard or public way on which a building line has been established by either of said boards acting under general or special laws to a height greater than that allowed by said general or special laws, nor otherwise in violation of section 3 of said chapter 383, Acts of 1905.

" No building shall be erected to a height greater than eighty (80) feet unless its width on each and every public street upon which it stands will be at least one-half its height.

" Nothing in this order shall be construed as affecting any condition or restriction imposed by deed, agreement or by operation of law on any property in said District B.

" The said Commissioners further provide that buildings may be erected to a height not exceeding one hundred and twenty-five (125) feet in that portion of the District B as established

by the Commission on Height of Buildings in its order dated December 3, 1904, recorded with Suffolk Deeds, book 3008, page 129, which lies fifty (50) feet westerly from the boundary line running from Columbus avenue to the centre of Boylston street, separating said District B from District A, as established by said order; *provided, however,* that said portion of District B is owned by the same person or persons who own the adjoining premises in District A.

"In witness whereof, the undersigned, being a majority of said commission, the third member (Nathan Matthews) being in Europe, hereto set their hands, this 21st day of July, 1905.

"Joseph A. Conry,
Henry Parkman,
"Commission on Height of Buildings in the City of Boston."

*B. E. Eames,* for the petitioner.

*T. M. Babson,* for the respondents.

KNOWLTON, C. J. The principal question presented by this case is whether the St. 1904, c. 333, and the St. 1905, c. 383, and the orders of the commissioners appointed under them, relative to the height of buildings in Boston, are constitutional. A jurisdictional question, if the petitioner is entitled to relief, is whether a remedy can be given him by a writ of mandamus.

The principal question may be subdivided as follows: First, can the Legislature, in the exercise of the police power, limit the height of buildings in cities so that none can be erected above a prescribed number of feet; second, can it classify parts of a city so that in some parts one height is prescribed and in others a different height; third, if so, can it delegate to a commission the determination of the boundaries of these different parts, so as to conform to the general provisions of the statute; fourth, can it delegate to a commission the making of rules and regulations such as to permit different heights in different places, according to the different conditions in different parts of one of the general classes of territory, made in the original statute; fifth, if it can, are the rules and regulations made by the commissioners within the statute, and within the constitutional authority of the Legislature and its agents?

In the exercise of the police power the Legislature may regulate and limit personal rights and rights of property in the

interest of the public health, public morals and public safety. *Commonwealth* v. *Pear*, 183 Mass. 242. *Commonwealth* v. *Strauss*, 191 Mass. 545. *California Reduction Co.* v. *Sanitary Reduction Works*, 199 U. S. 306, 318. With considerable strictness of definition, the general welfare may be made a ground, with others, for interference with rights of property, in the exercise of the police power. *Commonwealth* v. *Strauss, ubi supra.*

The erection of very high buildings in cities, especially upon narrow streets, may be carried so far as materially to exclude sunshine, light and air, and thus to affect the public health. It may also increase the danger to persons and property from fire, and be a subject for legislation on that ground. These are proper subjects for consideration in determining whether, in a given case, rights of property in the use of land should be interfered with for the public good. In *Attorney General* v. *Williams*, 174 Mass. 476, this court said : " Regulations in regard to the height and mode of construction of buildings in cities are often made by legislative enactments in the exercise of the police power, for the safety, comfort, and convenience of the people and for the benefit of property owners generally. The right to make such regulations is too well established to be questioned. *Watertown* v. *Mayo*, 109 Mass. 315. *Salem* v. *Maynes*, 123 Mass. 372. *Sawyer* v. *Davis*, 136 Mass. 239." In *People* v. *D'Oench*, 111 N. Y. 359, a statute limiting the height of dwelling houses to be erected in the city of New York was treated as unquestionably constitutional. See 1 Abbott, Mun. Corp. § 125 ; 2 Tiedeman, State and Federal Control, § 150. There is nothing in *Parker* v. *Commonwealth*, 178 Mass. 199, against the validity of the statutes now before us. That case was decided upon the construction given by the court to the legislative act under which it arose. The court held that the Legislature had not assumed to determine that any limitation of the height of buildings on the designated streets was required, in the interest of the public health and public safety, or of the public welfare, and it left open the question whether the Legislature might have made the restriction, without providing compensation, if it had declared in the statute that no damages should be paid. It is for the Legislature to determine whether the public health or public safety requires such a limitation of the rights of landowners in

a given case. Upon a determination in the affirmative, they may legislate accordingly.

The next question is whether the General Court may establish different heights for different neighborhoods, according to their conditions and the uses to which the property in them is put. The statute should be adapted to the accomplishment of the purposes in which it finds its constitutional justification. It should be reasonable, not only in reference to the interests of the public, but also in reference to the rights of landowners. If these rights and interests are in conflict in any degree, the opposing considerations should be balanced against each other, and each should be made to yield reasonably to those upon the other side. The value of land and the demand for space, in those parts of Boston where the greater part of the buildings are used for purposes of business or commerce, is such as to call for buildings of greater height than are needed in those parts of the city where the greater part of the buildings are used for residential purposes. It was, therefore, reasonable to provide in the statute that buildings might be erected to a greater height in the former parts of the city than in the latter, even if some of the streets in the former are narrower than those in the latter.

The general subject is one that calls for a careful consideration of conditions existing in different places. In many cities there would be no danger of the erection of high buildings in such locations and of such a number as to affect materially the public health or safety, and no statutory restrictions are necessary. Such restrictions in this country are of very recent origin, and they are still uncommon. Unless they place the limited height at an extreme point, beyond which hardly any one would ever wish to go, they should be imposed only in reference to the uses for which the real estate probably will be needed, and the manner in which the land is laid out, and the nature of the approaches to it.

It was decided in *Commonwealth* v. *Boston Advertising Co.* 188 Mass. 348, that a statute of this kind cannot constitutionally be passed for a mere aesthetic object. It was said in *Attorney General* v. *Williams*, 174 Mass. 476, 480, that the statute then before the court, enacted under the right of eminent domain,

with compensation for landowners, would have been unconstitutional if it had been passed "to preserve the architectural symmetry of Copley Square," or "merely for the benefit of individual property owners." The inhabitants of a city or town cannot be compelled to give up rights in property, or to pay taxes, for purely aesthetic objects; but if the primary and substantive purpose of the legislation is such as justifies the act, considerations of taste and beauty may enter in, as auxiliary. We are of opinion that the provision of the St. 1904, c. 333, for dividing parts of the city into two classes, in each of which there is a prescribed limit for the height of buildings, was within the power of the Legislature, and in accordance with the constitutional principle applicable to the enactment.

The delegation to a commission of the determination of the boundaries of these parts for the two classes was within the constitutional power of the General Court. The work of the commissioners under the first act was not legislation, but the ascertainment of facts, and the application of the statute to them for purposes of administration. Such subsidiary work by a commission is justified in many cases. *Commonwealth* v. *Plaisted*, 148 Mass. 375. *Brodbine* v. *Revere*, 182 Mass. 598. *Commonwealth* v. *Sisson*, 189 Mass. 247. *Stark* v. *Boston*, 180 Mass. 293. *Kingman, petitioner*, 153 Mass. 566. *Taunton* v. *Taylor*, 116 Mass. 254. *Nelson* v. *State Board of Health*, 186 Mass. 330. *Commonwealth* v. *Bennett*, 108 Mass. 27. *Field* v. *Clark*, 143 U. S. 649, 692. *In re Kollock, petitioner*, 165 U. S. 526.

The delegation to a commission of the power to fix different heights in different places in the parts included in Class B, under the St. 1905, c. 383, goes further, and allows the commissioners to make rules and regulations which are in the nature of subsidiary legislation. This is within the principle referred to in *Brodbine* v. *Revere, ubi supra*, and in some of the other cases above cited. It is that, under our system in Massachusetts, matters of local self-government might always be entrusted to the inhabitants of towns. On the establishment of cities this power is exercised by the city council, or by some board or commission representing the inhabitants. Even in towns such powers have long been exercised by local boards, for example,

by the board of health. Originally such representatives of the local authority were elected by the people; but for many years local boards, appointed by the Governor or other executive authority, have sometimes been entrusted with the exercise of this legislative authority. It is true that they are further from the people than the members of a city council, for whom the people vote, but in a true sense they represent the inhabitants in matters of this kind. Our decisions cover this point also. *Commonwealth* v. *Plaisted*, *Brodbine* v. *Revere, ubi supra.*

It does not follow that all rules and regulations made under such a delegation of authority would be constitutional, merely because the original statute is unobjectionable. Such rules may be tested by the courts to see whether they are reasonably directed to the accomplishment of the purpose on which the constitutional authority rests, and whether they have a real, substantial relation to the public objects which the government can accomplish. A statute, ordinance or regulation will not be held void merely because the judges differ from the legislators as to the expediency of its provisions. But if it is arbitrary and unreasonable, so as unnecessarily to be subversive of rights of property, it will be set aside by the courts. *In re Jacobs*, 98 N. Y. 98, 110. *People* v. *Gillson*, 109 N. Y. 389, 403. *New York Health Department* v. *Trinity Church*, 145 N. Y. 32, 40. *Chicago, Burlington & Quincy Railway* v. *Drainage Commissioners*, 200 U. S. 561, 593. *California Reduction Co.* v. *Sanitary Reduction Works*, 199 U. S. 306, 318. *Lawton* v. *Steele*, 152 U. S. 133, 137. *Dobbins* v. *Los Angeles*, 195 U. S. 223, 235, 238. *Jacobson* v. *Massachusetts*, 197 U. S. 11, 28, 31.

We do not see that the action of the commissioners, under the St. 1905, was beyond their power under the constitution. It was seemingly in accordance with the general purpose of the Legislature, and was directed to considerations which they deemed proper in adjusting the rights and interests of property owners and the public. The question is not whether the court deems all the provisions wise; but whether they appear to be outside of the constitutional power of the commission. In prescribing heights in the district, the commissioners might make the width of the streets on which a building was to be erected one factor to be considered. Their action in this particular

relates wholly to buildings in Class B, which includes only the residential parts of the city.

We cannot say that the prohibition of the erection of a building of a greater height than eighty feet in Class B, unless its width "on each and every public street upon which it stands will be at least one-half its height," was entirely for aesthetic reasons. We conceive that the safety of adjoining buildings, in view of the risk of the falling of walls after a fire, may have entered into the purpose of the commissioners. We are of opinion that the statutes and the orders of the commissioners are constitutional.

We think that the court has jurisdiction to dispose of the case on the merits, under this petition for a writ of mandamus. The wrong alleged is that the building commissioner, and afterwards the board of appeal, refused to give the petitioner a permit to erect a building. It is conceded that the petitioner was not entitled to a permit if the statutes and orders referred to are constitutional. He alleges that the board of appeal refused to do their duty, and that his only effectual remedy is by a writ of mandamus, ordering them to grant a permit. The case comes within the general rule giving jurisdiction to issue such writs. *Farmington River Water Power* v. *County Commissioners*, 112 Mass. 206, 212. *Carpenter* v. *County Commissioners*, 21 Pick. 258, 259. *Attorney General* v. *Boston*, 123 Mass. 460. See *Locke* v. *Selectmen of Lexington*, 122 Mass. 290; *Attorney General* v. *Northampton*, 143 Mass. 589.

The building commissioner and the board of appeal are not judicial officers. St. 1892, c. 419. St. 1894, c. 443. The fact that a refusal to act is founded on a mistake of law does not preclude a remedy by a writ of mandamus. In cases where the duty to perform an act depends solely on the question whether a statute or ordinance is constitutional and valid, the question may sometimes be determined on a petition for a writ of mandamus. *Attorney General* v. *Boston*, 123 Mass. 460. *Warren* v. *Charlestown*, 2 Gray, 84. *Larcom* v. *Olin*, 160 Mass. 102, 110.

*Petition dismissed.*