DUNLAP, J.
This canse is here on appeal from the judgment of the court of common pleas, and is a suit brought by the plaintiff, a citizen, resident and taxpaj'er of the city of Cleveland, engaged in the laundry business. It is brought on behalf of himself and all taxpayers of the city and all others engaged in the laundry business.
Complaint is made that a certain ordinance No. 42256, entitled “An Ordinance Providing for the Licensing and Regulation of Public Laundries,” which became effective May 1,1917, is an abuse of corporate power and unconstitutional, being in violation of Art. 1, Secs. 1, 2 and Art. 2, Sec. 26, of the constitu *400 tion of Ohio, and of Art. 1, See. 8, of the constitution of the United States.
The prayer of the petition is for an injunction restraining the defendants from enforcing said ordinance or any part thereof. To this petition a demurrer is filed and the question for our determination is the sufficiency of the petition.
A copy of the ordinance is of course, before us, being attached to the petition. Its provisions will only be incidentally referred to in this opinion.
No technical question involving the propriety of the proceedings or the relief sought is raised, ánd we shall treat the case as involving simply the questions of the reasonableness and constitutionality of the ordinance.
The able brief of plaintiff concedes the power of the city of Cleveland to regulate the public laundry business as a means cf public safety, thus distinctly and obligingly narrowing the inquiry, and urges only two main grounds or reasons for his claims that the ordinance is unreasonable and unconstitutional.
The first of these grounds is that “the definition of ‘public laundry’ is purely arbitrary, artificial and unreasonable.” Section of the ordinance provides:
“Any building, structure, place, premises or establishment, which is used for the purpose of laundering wearing apparel, table or bed linen, curtain, rugs, towels, or any or all of said articles for thirty or more owners of such articles per week, and for pay, regulated either by a flat-rate, piece price, or by weight, shall be deemed a public laundry for the purpose of this ordinance.”
It must be obvious that an ordinance pretending to regulate public laundries should contain a definition of such a laundry; should explain what constitutes a public laundry, and such definition from the very nature of things, unless it is to include the humble home of every poor washwoman, must be more or less arbitrary. That is to say, a line of demarcation must be drawn between the public and the private laundry. Is it the number of the customers that is to determine? Or is it the character and quality of the work? Perhaps the very wise legislature would adopt a definition which partook somewhat of *401 both of these ideas. Thus it might be possible to have a wiser definition, one which would perhaps embrace a laundry which had many less than thirty customers, and basing the right of regulation upon the amount of work done rather than the number of customers, or perhaps with equal propriety it could be based upon the fact of the employment of a certain amount of help, providing all the time the idea of its being a public laundry was kept in mind. Any one or all of such provisions might wisely and properly be in this definition. There would still be an exception created in favor of the home of the poor wash-woman, which may be the one thing that this ordinance intended to exempt from its operation. We are not claiming that a definition so amended would be ideal. We are not even claiming that it would be better or more practical than the definition contained in this ordinance. What we mean to say is that it is not in human experience for a legislative body to adopt the very best and wisest ideas upon its first attempt to enact a complicated but eoncededly wise regulative ordinance. Such laws must be started and watched and amended as occasion may arise and necessity decree. The very idea of a “public laundry,” however, carries with it the idea of an unlimited number of customers. It could hardly be said that a laundry which was under contract to serve only certain customers ivas a public laundry, but even such a laundry comes within the provisions of this ordinance if its contracts- exceed thirty. It can not then lay claim to privacy. And so it is apparent that the most natural basis for the determination of whether a laundry is public or private is that of the number of customers, and not the other considerations which we have so gratuitously offered. This- proposition, if one granted, narrows the particular question we are now considering. Surely the number may as well be thirty as any other arbitrary number. It is a number that amply protects the home of the poor washwoman from the visits of the health commissioner and his deputies, and yet which probably forces every person in purely public laundry business to look well to his surroundings to see that he complies with the law.
*402 So far as we are aware legislation of this kind even though somewhat arbitrary has been nearly uniformly upheld. The principle is well stated by Mr. Justice Field in the case of Barbier v. Connolly, 113 U. S. 27 [28 L. Ed. 923; 5 Sup. Ct. 357], as follows:
“Regulations for these purposes may press with more or less weight upon one than upon another, but they are designed, not to impose unequal or unnecessary restrictions upon any one, but to promote, with as little individual inconvenience as possible, the general good. Though, in many respects, necessarily special in their character, they do not furnish just ground of complaint if they operate alike upon all persons and property under the same circumstances and conditions. Class legislation, discriminating against some and favoring others, is prohibited, but legislation which, in carrying out a public purpose, is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, is not within the amendment.”
We are cited by the plaintiff to certain Ohio eases, which it is contended are in support of this particular objection to this ordinance, but we do not quote them here, for we think the provisions of the enactments questioned in them are clearly to be distinguished from the provisions of the ordinance in question. We think that the following ^authorities are more or less in point and that they are against the contention of plaintiff: Marmet v. State, 45 Ohio St. 63 [12 N. E. 463]; Toledo v. Brown, 32 O. C. C. 357 (14 N. S. 165); Welch v. Swasey, 193 Mass. 364 [79 N. E. 745; 118 Am. St. 523]; St. Louis v. Bircher, 7 Mo. App. 169; Felgum v. Nashville, 76 Tenn. (8 Lea) 635; Cobb v. Durham Co. (Comrs.), 122 N. C. 307 [30 S. E. 338]; Hubbell v. Riggins, 148 Ia. 36 [126 N. W. 914; 1912 B. Ann. Cas. 822].
In our opinion the definition of “public laundry” as contained in this ordinance sufficiently meets the requirements of our constitutions, both state and national, and is a reasonable definition. We therefore find no valid objection to this ordinance for this reason, and we pass to a consideration of the second ground, which is that—
*403 “The ordinance grants legislative and judicial power to an administrative officer. ’ ’
It is argued that because certain sections of this ordinance provide for approval by the health commissioner before the license may issue, and that because such approval can only be obtained if the location, the construction, the ventilation, the floor space and the sanitary drainage arrangements are sufficient to properly protect the public health and the health of the persons to be employed in such. proposed laundry, that thereby there is delegated to him judicial powers and perhaps legislative powers; that he is left to be the sole judge of what shall constitute “adequate ventilation,” “adequate plumbing,” etc., and that the delegation of such powers is in contravention of the constitution of Ohio. We are not inclined to go deeply into this question. It is apparent that rules are laid down in this ordinance for the guidance of the health commissioner in many of the particulars requisite for the conduct of the lawful laundry, and these rules he must obey, and with regard to them it will hardly be contended that this ordinance is unconstitutional. The most that can be said for this contention is that there are some matters, such as “adequate plumbing,” “adequate ventilation,” upon which he passes with either judicial or legislative power. It would be improper for us in the present case to pass upon the validity of all these sections, for even if we found some invalid and in contravention of the constitution, we would not be justified thereby in holding the ordinance as a whole invalid. The doctrine of sustaining the valid part of legislation in spite of what is known as “partial invalidity” of such legislation is too well settled in Ohio for such action upon our part. We are not conceding that the passing on “adequate plumbing” and “adequate ventilation” is the exercise of a power forbidden by the constitution, but even if such concession had been made, we are firmly of the opinion that the provisions of the ordinance granting this power to the health commissioner are not so interwoven into the fabric of the whole ordinance as to be unseparable or that their separation would invalidate or destroy the entire ordinance.
In our view at the present time and for the present case it *404 becomes immaterial that there are or may be some unconstitutional provisions in this ordinance. It would perhaps be surprising if there were none. We are convinced that the ordinance has enough of validity about it, enough of virtue in it to be entitled to a trial. If in carrying out the provisions of this ordinance occasion should arise for individual complaints, there is ample opportunity in a court and elsewhere to adjust such differences without the drastic action sought by plaintiff’s petition.
The demurrer to the petition will be sustained and the cause dismissed at plaintiff’s costs.
Grant and Lawrence, JJ., concur.