FREDERICK AYER & others *vs.* COMMISSIONERS ON HEIGHT OF BUILDINGS IN BOSTON.

Suffolk.    November 7, 8, 1921. — June 28, 1922.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Commission on Height of Buildings in Boston. Constitutional Law,* Police power. *Boston. Words,* "Persons aggrieved."

In certiorari proceedings brought by the owner of two lots of land on the easterly side of Clarendon Street between Boylston Street and St. James Avenue in Boston against two members of the commission on the height of buildings in Boston created by Spec. St. 1915, c. 333, it appeared that by an order filed on November 2, 1916, after notice and public hearings the commission revised the building districts in Boston so that the petitioner's lots, which previously had been in district B and had had a limitation of eighty feet and one hundred feet in the height of the buildings thereon, were included in district A, wherein the height of buildings might be one hundred and twenty-five feet, and also certain land adjacent to the Public Library, which formerly was in district B with a limitation of one hundred feet in the height of buildings thereon was included in district A. It also appeared that a petition in the nature of an appeal from this revision was filed by the trustees of the Public Library, which did not refer to the land on Clarendon Street, and which was based upon increased fire hazard to the Public Library caused by the revision and that a similar petition was filed by Trinity Church, which had a house of worship across the street from the petitioner's lots, objecting that the revision would interfere with the architectural beauty of the church. Without notice to the petitioner and without further hearings, the commission on January 12, 1917, filed a new order changing their former order as to the lines of districts A and B so that the petitioner's lots and the land adjacent to the Public Library were placed in district B as theretofore. *Held,* that

(1) The trustees of the Public Library and Trinity Church came within the designation, "any person who is aggrieved," as used in Spec. St. 1915, c. 333, § 2, and had a right to appeal from the order of November 2, 1916;

(2) There was no necessity for notice to the petitioners on the hearing of the appeals;

(3) In being denied a hearing on the appeals, the petitioners were deprived of no right;

(4) It could not be inferred that the commission's order of January 12, 1917, was based exclusively upon æsthetic considerations;

(5) The orders of November 2, 1916, and of January 12, 1917, should be construed as one in their ultimate effect and in combination they constituted the final determination of the commission as to the matters committed to them by the statute;

(6) No inference of individual discrimination in the sense of a violation of rights to due process of law and to equal protection of laws as to personal and property rights contrary to constitutional guarantees was warranted from the facts;

(7) The two orders were within the scope of the statutory power conferred upon the commission.

Although æsthetic considerations alone cannot justly form the basis for the exercise of police power to limit the use of private property, they may be taken into account as ancillary to some other main purpose within the appropriate sphere of the police power.

The commission on height of buildings in the city of Boston created by Spec. St. 1915, c. 333, in the practical administration of its duties is entitled to rational presumptions in favor of the legality of its acts.

Upon an appeal under Spec. St. 1915, c. 333, § 2, from an order of the commission on the height of buildings in the city of Boston revising the building districts, the commission was not confined in its deliberations to the reasons set forth in the appeal but was bound to give due heed to all public considerations and private interests which they ought to have had in view under the statute in originally revising the division line between the districts created.

PETITION, filed in the Supreme Judicial Court on September 26, 1917, for a writ of certiorari addressed to the commissioners on height of buildings in the city of Boston created by Spec. St. 1915, c. 333, directing them to certify to the court their orders and proceedings in reference to the determination and revision of boundaries of building districts A and B in the city of Boston.

The petition came on to be heard by *Jenney*, J., upon an agreed statement of facts described in the opinion and, at the request of the parties, he reported the case to the full court for determination.

*N. Matthews*, (*C. H. Baesler* with him,) for the petitioners.

*A. D. Hill*, (*S. Silverman* with him,) for the respondents.

RUGG, C. J. This is a petition by the owners of the real estate on the easterly side of Clarendon Street between Boylston Street

and St. James Avenue against the members of the commission on height of buildings in the city of Boston. That commission was created by Spec. St. 1915, c. 333, for the purpose of relocating the boundaries of districts in Boston within which under earlier statutes buildings had been restricted as to height. Under authority conferred by St. 1904, c. 333, as amended by St. 1905, c. 383, Boston had been divided into two districts, one called A, wherein buildings were used chiefly for business, the height of which was limited to one hundred and twenty-five feet, and the other called B, wherein buildings were used chiefly for residence or non-business purposes, the height of which was limited to from eighty to one hundred feet depending upon conditions not here relevant. By virtue of action taken under these earlier statutes, the lots of the petitioners were in district B and the height of the building on one of their lots was limited to one hundred feet and of that on their other lot to eighty feet. The validity of these limitations is not here in question. The case must be considered on the footing that the petitioners' land rightly had become subject to these restrictions. *Attorney General* v. *Williams,* 174 Mass. 476, *S. C.* 178 Mass. 330, affirmed in *Williams* v. *Parker,* 188 U. S. 491. *Parker* v. *Commonwealth,* 178 Mass. 199. *Welch* v. *Swasey,* 193 Mass. 364; *S. C.* 214 U. S. 91. The respondents, pursuant to the authority conferred by Spec. St. 1915, c. 333, gave notice and held public hearings and thereafter on November 2, 1916, made and caused to be recorded an order revising the boundaries of districts A and B whereby, amongst many other and extensive changes, the two lots owned by the petitioners, having been previously in district B, were placed in district A, so that, if it stood as a final determination, buildings to a height of one hundred and twenty-five feet might be erected on them. Two petitions in the nature of appeals from this revision were seasonably filed with the respondents. One by the trustees of the Public Library of the city of Boston related to property adjacent to the Boston Public Library and did not refer to the petitioners' land. It recited at length reasons, based chiefly upon increased fire risk to that building and its priceless contents, why the revision of November 2, 1916, was improper in that it placed adjacent land in district A instead of district B as theretofore, and permitted thereby buildings previously limited to one hundred feet in height to be one

hundred and twenty-five feet in height. The other appeal was by Trinity Church, whose house of worship is across Clarendon Street from the lots of the petitioners. That appeal in its statement of reasons refers chiefly to the architectural beauty and dignity of the church and sets forth the harm likely to be done it in this respect by permitting an increase in the height of the building upon one lot of the petitioners from one hundred feet to one hundred and twenty-five feet and on the other from eighty to one hundred and twenty-five feet. Without holding further hearings, the respondents on January 12, 1917, filed a new order changing the lines of districts A and B so that land adjacent to the Public Library was placed in district B as it theretofore had been and the two lots of the petitioners were put back in district B; that is to say, they were left in respect to height of buildings as they were for years before the revision of November 2, 1916.

1. The petitioners' first contention is that neither the trustees of the Public Library nor Trinity Church was entitled to appeal from the order of November 2, 1916. It was provided by Spec. St. 1915, c. 333, § 2, that "any person who is aggrieved by said order [of the commission revising the boundaries of the districts] may appeal to the commission for revision within sixty days after the recording thereof." The scope and meaning of the words "person who is aggrieved" must be determined with reference to the context and the subject matter. The statute relates to a change in the laws respecting heights of buildings, a subject of direct financial interest not only to owners of land shifted from one district to the other but to adjacent and nearby owners whose property values well might be affected by changing uses permitted to other adjacent and nearby estates. Moreover, the appeal permitted is not to a court but to the commission itself. Doubtless it was designed to enable anybody, whose property rights were immediately affected by the lines, to call special facts to the attention of the commission. It seems plain to us that both these corporations were so affected that within the meaning of this statute they might ask the commission to reconsider their action. Of course our decision on this point does not affect the scope and meaning of "persons aggrieved" as laid down in numerous other decisions. See, for example, *Donham* v. *Public Service Commissioners*, 232 Mass. 309, 328, 329; *Monroe*

*v. Cooper*, 235 Mass. 33, and cases collected in each decision. The altered conditions here presented require a different meaning in this particular statute.

2. There was no necessity for notice to the petitioners of the hearing on the appeals. The statute required none. The general notice and public hearings specified by the statute were given. The petitioners had ample opportunity to present their views at that hearing. The work of the commission "was not legislation, but the ascertainment of facts, and the application of the statute to them for purposes of administration." *Welch* v. *Swasey*, 193 Mass. 364, 375. The adjustment of the details of the boundary lines of the two districts to the particular circumstances of each parcel of property within a doubtful area demanded the administrative and executive ability of practical men of experience and vision. In being denied a hearing, the petitioners were deprived of no right. No hearing was required by general principles. *Commonwealth* v. *Sisson*, 189 Mass. 247, 252. *Commonwealth* v. *Feeney*, 221 Mass. 323, 325. *Burgess* v. *Mayor & Aldermen of Brockton*, 235 Mass. 95, 100, and cases there collected.

3. The contention that the change made by the commission in its original order of November 2, 1916, by its order of January 12, 1917, was based exclusively upon æsthetic considerations, cannot be supported. There is no statement of this nature in the order. The argument is that an inference to that effect ought to be drawn from all the circumstances. The land here in question is in the immediate neighborhood of Copley Square. The Public Library and Trinity Church both face that square. The New Old South Church is across the street from it. The height of buildings on parts of streets adjacent thereto was limited by St. 1898, c. 452, under the power of eminent domain. That statute was held constitutional in *Attorney General* v. *Williams*, 174 Mass. 476, affirmed in *Williams* v. *Parker*, 188 U. S. 491. It is an open square and public park with adjacent buildings of great public importance and of architectural nobility of design housing works of art, books and manuscripts of extraordinary value. Æsthetic considerations alone cannot justly form the basis for the exercise of police power to limit the use of private property, but they may be taken into account as ancillary to some other main purpose within the appropriate sphere

of the police power. *Welch* v. *Swasey*, 193 Mass. 364; *S. C.* 214 U. S. 91. *Opinion of the Justices*, 234 Mass. 597, 604, 605, and cases there referred to. The commission in the practical administration of its duties is entitled to rational presumptions in favor of the legality of its acts. *Perkins* v. *Westwood*, 226 Mass. 268. *Commonwealth* v. *O'Neil*, 233 Mass. 535, 540. *Moore Drop Forging Co.* v. *Board of Conciliation & Arbitration*, 239 Mass. 434. Their motives are not and could not well be impugned. *Boston* v. *Talbot*, 206 Mass. 82, 91.

Manifestly the change in the lines in order to prevent high buildings on land adjacent to the Public Library might have been brought about by a desire to diminish fire risk, and the accompanying danger to life and property. The same considerations may have been a dominant purpose in respect to the changes affecting the petitioners' property. Doubtless it would be difficult to isolate the several factors which moved the commission to that action. The regulation of the height of buildings in a region like Copley Square in a great city may well involve the weighing of complicated and conflicting elements and interests. The commission were not confined in their deliberations to the reasons set forth in the appeal of Trinity Church. Such a rehearing in the nature of an appeal is not to be construed with the statutory strictness required, for instance, in a motion for a new trial. The commission were bound to give due heed to all public considerations and private interests in passing upon the appeal which they ought to have had in view under the statute in originally revising the division line between the two districts. Fairly construed the order of January 12, 1917, does not mean that in making the revision the commission had regard only to the grounds set forth in the petitions for revision, but that, by more mature reflection and careful reconsideration of all the pertinent facts, a different conclusion had been reached. This was within the power of the commission. *Waucantuck Mills* v. *Magee Carpet Co.* 225 Mass. 31, 33. It cannot be presumed that the revision was made solely in the interest of a single owner without regard to the broad public interests involved in the whole subject. There is nothing in the action of the commission which contravenes the principle illustrated by *Riverbank Improvement Co.* v. *Chadwick*, 228 Mass. 242, 247, 248. The commission were not

required to embody their reasons in their order. The broad rules by which they must be guided were set out in the statute. There is nothing in the orders which requires the inference that constitutional bounds were transgressed. The case upon this point appears to be governed completely by *Welch* v. *Swasey,* 193 Mass. 364; *S. C.* 214 U. S. 91, the reasoning of which need not here be restated. See also *Lincoln Trust Co.* v. *Williams Building Corp.* 229 N. Y. 313; *Cochran* v. *Preston,* 108 Md. 220; *Windsor* v. *Whitney,* 95 Conn. 357; *Matter of Clinton Avenue,* 57 App. Div. (N. Y.) 166, affirmed in 167 N. Y. 624; *St. Louis Poster Advertising Co.* v. *St. Louis,* 249 U. S. 269.

4. The contention that the two orders are unconstitutional in that they constitute unlawful discrimination against the petitioners and their property in our opinion cannot be supported. The two orders should be construed as one in their ultimate effect. The two in combination constitute the final determination of the commission as to matters committed to them by the statute. It seems to us that the facts warrant no inference of individual discrimination in the sense of denial of equal protection of equal laws as to personal and property rights, contrary to constitutional guarantees. The property of the petitioners was left by the final action of the commission just where it was as to restrictions before they acted at all. It is difficult to see how the removal of the more onerous building restriction from some estates and not from others is unconstitutionally discriminatory. The statute requires that there be two districts. A dividing line must be drawn somewhere. The time for making a revision of the dividing line was made by Spec. St. 1915, c. 333, several years earlier than required by St. 1904, c. 333. The change was in a sense a gratuitous acceleration of a possibility of change for the benefit of owners of property become by growth available for business uses rather than residential purposes. There are manifest difficulties in the way of converting the opportunity to compete for a gratuity from government, even though framed according to principles of distributive justice, into an unconstitutional discrimination, which are far from having been overcome by the petitioners. See *Earle* v. *Commonwealth,* 180 Mass. 579, and *Sawyer* v. *Commonwealth,* 182 Mass. 245.

The petitioners have argued that the order of the commission-

ers as amended violated the rights to due process of law and the equal protection of the laws secured to them under the Fourteenth Amendment to the Constitution of the United States. The reasons already stated under this and the preceding divisions of this decision show why in our opinion those contentions cannot be sustained.

5. The two orders are within the scope of the statutory power conferred upon the commission. The object of the original statute was to divide the city of Boston into two districts, one "where the greater part of the buildings are used for purposes of business or commerce," and the other "where the greater part of the buildings are used for residential purposes." *Welch v. Swasey*, 193 Mass. 364, 374. It must be assumed on this record that the property of the petitioners rightly was in the residential district under the earlier division. That means that their property may have been devoted to business or commercial uses and yet rightly have been in the residential district, because most other property in the same district was of that class. We cannot say that a like situation does not exist under the revised lines.

The substantive rights of the petitioners have been considered without regard to the form of the remedy.

*Petition dismissed.*